UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Wendi L. Hanson,

          Plaintiff,                          **MEMORANDUM OPINION AND ORDER**

    v.                                          Civil No. 10-3094 ADM/SER

5K Auto Sales, LLC; Mohammad Sonbol;
Larry Vitzloff; Mark Wilson; Deputy Adam
Fournier; the Wright County Sheriff's Office,

          Defendants.

_____

Nicholas P. Slade, Esq., Barry, Slade & Wheaton, LLC, Minneapolis, MN, on behalf of Plaintiff.

Geoffrey R. Colosi, Esq., White Bear Lake, MN, on behalf of Defendants 5K Auto Sales, LLC and Mohammad Sonbol.

_____

## I. INTRODUCTION

This matter is before the undersigned United States District Judge for a ruling on Plaintiff Wendi L. Hanson's ("Hanson") Motion for Summary Judgment [Docket No. 21]. Defendants 5K Auto Sales, LLC ("5K Auto Sales") and Mohammad Sonbol ("Sonbol") oppose the motion.[1] For the reasons set forth below, the motion is denied.

---

[1] Defendants Deputy Adam Fournier and the Wright County Sheriff's Office (collectively the "Government Defendants") also filed a Motion for Summary Judgment [Docket No. 16] and opposed the present motion. However, prior to oral argument on November 22, 2011, the Government Defendants sent a letter dated November 21, 2011 [Docket No. 37] withdrawing their motion stating that they had reached a settlement with Plaintiff. The other Defendants in this matter, Larry Vitzloff ("Vitzloff") and Mark Wilson ("Wilson"), have not filed a notice of appearance.

## II. BACKGROUND[2]

Defendant 5K Auto Sales is in the business of selling pre-owned automobiles; Defendant Sonbol is its owner. On February 1, 2010, Plaintiff Hanson purchased a 1998 Cadillac Seville from 5K Auto Sales. Compl. [Docket No. 1] ¶ 10. The total price of the vehicle was $4,885.35. Id. ¶ 11. Hanson and 5K Auto Sales agreed that she would pay $3,000.00 cash, take possession of the vehicle that day, and pay the remaining $1,885.35 in three installments of $628.45 each. Id. ¶ 12.

On February 1, 2010, Hanson also signed a series of documents referred to as an "Application to Title/Reg. a Vehicle," a "Supplemental Dealer Reassignment," an "Application for Credit," an "As is–Sold without warranty," a "Bill of Sale," and a "Right to Repossession." Decl. of Moustafa Khalil [Docket No. 29] ("Khalil Decl.") Exs. A, B, C, D, E, G. On these documents, Hanson listed an address in Minneapolis and a phone number. The "Application to Title/Reg. a Vehicle" includes a section that purports to create a security interest in the vehicle in favor of 5K Auto Sales. Khalil Decl. Ex. A.

5K Auto Sales asked Hanson to return to complete more paperwork to be filed with the State of Minnesota. Khalil Decl. ¶ 10. On February 6, 2010, Hanson returned and tendered her first payment of $628.45 but did not fill out any paperwork. Khalil Decl. ¶ 11. Later, 5K Auto Sales attempted to contact Hanson, but she was unavailable and did not return calls. Khalil Decl. ¶¶ 12–15.

In March 2010, Hanson's second payment of $628.45 became due, but she did not pay. Compl. ¶ 25. In late March or early April 2010, 5K Auto Sales hired Defendants Vitzloff and

---

[2] On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).

Wilson to repossess the Cadillac. Khalil Decl. ¶¶ 15–16. Vitzloff and Wilson, after some investigation, decided to repossess the vehicle on April 18, 2010. See Compl. ¶¶ 27–30. Vitzloff and Wilson contacted the Wright County Sheriff's Department and asked for an officer to accompany them "so there would be no problems." Aff. of Jason M. Hill [Docket No. 19] ("Hill Aff.") Ex. A. Vitzloff and Wilson then proceeded to a private residence hosting a family gathering that Hanson was attending and to which she had driven the Cadillac. See id.; Compl. ¶¶ 30–31.

Vitzloff and Wilson arrived at the location, and Deputy Fournier arrived shortly thereafter. Hill Aff. Ex. A. Hanson claims they arrived simultaneously. Compl. ¶ 31. Vitzloff and Wilson attempted to repossess the vehicle but Hanson and her mother objected. Compl. ¶ 32. An altercation ensued with Hanson repeatedly objecting to the repossession and Vitzloff, Wilson, Hanson, and Hanson's mother all attempting to gain control of the vehicle. Compl. ¶¶ 32–47. In the course of the altercation, the vehicle was disabled and Hanson and her mother sustained minor injuries. Compl. ¶¶ 38–40. Both factions approached Deputy Fournier for assistance, but he declined. Hill Aff. Ex. A. Hanson, however, avers the Deputy stated that the repossessors had a right to the vehicle and that "it would go better in court" if she allowed the repossession. Compl. ¶¶ 50, 52. Regardless, eventually the vehicle was repossessed. Hill Aff. Ex. A. 5K Auto Sales contacted Hanson and informed her she had thirty days to make a payment or the car was going to be resold. Khalil Decl. ¶ 17. The Cadillac was resold by 5K Auto Sales on May 26, 2010. Aff. of Nicholas P. Slade [Docket No. 24] ("Slade Aff.") Ex. D.

Hanson now moves for summary judgment, arguing that the repossession was wrongful because 5K Auto Sales never created a valid security interest in the vehicle and because the repossession was accomplished with a breach of the peace. Hanson further argues that 5K Auto

3

Sales acted under the "color of law" and is liable under 42 U.S.C. § 1983 for violation of her due process rights. 5K Auto Sales maintains that its repossession was appropriate.

At oral argument, after learning that Hanson had settled with the Government Defendants, the Court inquired whether Hanson was asserting § 1983 claims against the remaining Defendants as well, and whether federal jurisdiction was still appropriate. Hanson responded that she was asserting § 1983 claims against all Defendants, and the parties addressed the Court's jurisdiction in letters to the Court [Docket Nos. 39 & 41]. Convinced that a plaintiff may assert a § 1983 claim against a private party in some circumstances, see Moore v. Carpenter, 404 F.3d 1043, 1046 (8th Cir. 2005) (noting that there is state action for purposes of § 1983 claim against a private party when the private party uses self-help repossession if a police officer "affirmatively intervenes to aid," and noting that accompanying repossessors to ensure repossession occurs or stating that repossession is legal may be basis for liability), the Court retains jurisdiction and will consider the merits of Hanson's motion.

### III.  DISCUSSION

**A.     Standard of Review**

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall issue "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing Fed. R. Civ. P. 56(c));[3] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986) (same); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (same). On a motion for summary judgment, the Court views the evidence

---

[3] Federal Rule of Civil Procedure 56 was amended effective December 1, 2010; the summary judgment standard was previously located in Rule 56(c).

in the light most favorable to the nonmoving party. Ludwig, 54 F.3d at 470. The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**B.      Minnesota Odometer Statutes**

Hanson asserts a claim under Minn. Stat. § 325E.15 against 5K Auto Sales and Sonbol relating to the transfer of title of the Cadillac. Minnesota has a comprehensive scheme for motor vehicle titles. See generally Minn. Stat. Ch. 168A. Under the statutory scheme, a dealer that buys a vehicle for resale does not need to apply for a certificate of title. Minn. Stat. § 168A.11, Subd. 1(a). However, upon resale, the buyer must complete an application for title, either as a separate form or by filling out the application for title section of the certificate of title, and the dealer must mail or deliver the application with appropriate taxes and fees within ten business days. Minn. Stat. § 168A.11, Subd. 1(d). A person who willfully fails to mail or deliver an application as required is guilty of a misdemeanor. Minn. Stat. § 168A.30, Subd. 2. Minnesota also has a statutory scheme regarding odometers in motor vehicles. See Minn. Stat. §§ 325E.13–325E.16. Minn. Stat. § 325E.15 prohibits the transferor of a motor vehicle from violating "any regulations adopted under this section." The Minnesota Supreme Court has ruled that the odometer statutes and title requirements in § 168A.11 must be read together as "an integrated statutory scheme." Carousel v. Gherity, 527 N.W.2d 813, 817 (Minn. 1995).

Hanson avers 5K Auto Sales is liable because it failed to procure a title for her. 5K Auto Sales responds that it was Hanson who "did not complete the paperwork required to effectuate the parties' intent." Mem. of Law in Opp. to Pls.' Mot. for Summ. J. [Docket No. 28] 5. 5K

Auto Sales, however, does not explain what paperwork was left incomplete—the "Application to Title/Reg. a Vehicle" is signed by Hanson. Khalil Decl. Ex. A. Furthermore, even if Hanson was non-compliant in filling out paperwork, 5K Auto Sales does not explain what legal theory, such as waiver, estoppel, or contributory fault, would preclude Hanson from recovery.

Nonetheless, on the present record, Hanson is not entitled to summary judgment in her favor. First, it is unclear whether a cause of action for violation of Minn. Stat. § 168A.11 may be asserted at all. The Minnesota Court of Appeals has held that a dealer cannot be liable under the odometer statutes for a violation of § 168A.11 alone, as opposed to a violation of a form adopted under the common scheme of § 168A.11 and § 325E.15 as in Carousel. Tillman v. Werner, No. A09-330, 2009 WL 3736114, at *4 (Minn. Ct. App. Nov. 10, 2009).

Furthermore, even if a cause of action is appropriate, a necessary element to recover under § 325E.15 is actual damages. Minn. Stat. § 325E.16, Subd. 3; see also Hunt v. Mazaharirvesh, No. A06-2134, 2007 WL 4472290, at *3 (Minn. Ct. App. Dec. 24, 2007) ("[L]iability under Minn.Stat. § 325E.15, requires a showing that the person has been 'injured' and has 'actual damages.'"). Hanson has articulated no theory of how 5K Auto Sales' failure to transfer title injured her or caused her actual damages. To be sure, she complains that 5K Auto Sales repossessed her vehicle. However, that repossession was unrelated to the status of the vehicle's title. The Cadillac was repossessed because Hanson failed to make a payment in March 2010, not because of any defect in the title. Therefore, summary judgment as it relates to this claim is denied.

C.   **Violation of the Uniform Commercial Code ("UCC") and Conversion**

Hanson also moves for summary judgment on her claims for violation of Minnesota's

version of the UCC and for conversion. Because conversion turns on the "lawfulness" of the repossession,which in turn depends on the UCC, see Pls.' Mem. in Supp. of her Mot. for Summ. J. [Docket No. 23] 22, the claims will be analyzed jointly.

  **1.**  **Wrongful repossession**

Under Minnesota's UCC, a secured party may take possession of collateral after default on an obligation without judicial process "if it proceeds without a breach of the peace." Minn. Stat. § 336.9-609. Hanson argues that the repossession was unlawful because (1) 5K Auto Sales was not a secured party and (2) the repossession did not proceed without a breach of the peace.

Hanson argues that 5K Auto Sales could not create a security interest in her vehicle because 5K Auto Sales is not licensed as an automobile financier. A "secured party" is "a person in whose favor a security is created or provided for under a security agreement." Id. § 336.9-102(a)(73). A "security agreement" is "an agreement that creates or provides for a security interest." Id. § 336.9-102(a)(74). Under Minnesota law, "a security agreement is effective according to its terms between the parties, against purchasers of the collateral, and against creditors." Id. § 336.9-201(a). However, applicable consumer laws apply to security agreements, including the laws regarding motor vehicle retail installment contracts in Minn. Stat. Ch. 53C. Id. § 336.9-201(b). In Minnesota, a license is required for anyone to engage in the business of a sales finance company. Id. § 53C.02(a).

5K Auto Sales does not hold such a license, nor does Sonbol. Slade Aff. ¶ 2. Therefore, Hanson argues that 5K Auto Sales could not have created a security interest as a matter of law. Hanson's argument is flawed in several respects. First, it is unclear whether a license is required. A license is only required for a company that deals with "retail installment sales," defined as "agree[ing]to sell a motor vehicle at a sale price payable in one or more installments with the payment of a finance charge." Minn. Stat. § 53C.01, Subd. 9. No evidence has been

7

adduced from which to infer that 5K Auto Sales charged Hanson a finance charge. To the contrary, the negotiated price was $4,885.35 to be paid with $3,000.00 followed by three installments of $628.45 each. While it may be the case that the negotiated price indirectly charged Hanson for the extension of credit, such a claim cannot be resolved on the record, which reflects no evidence of a finance charge.

More fundamentally, however, even if a license were required, it does not eviscerate the agreement between the parties. Under Minnesota law, a statute that conflicts with a security agreement under the UCC has only the effect the statute specifies. Minn. Stat. § 336.9-201(c). The remedies for a violation of Minn. Stat. § 53C.02 do *not* include rescinding or voiding the underlying contract. Minn. Stat. § 53C.12. This is consistent with Minnesota's disfavorable treatment of voiding contracts under the doctrine of *ultra vires*. See Minn. Stat. § 302A.15 (allowing *ultra vires* claims against corporation only in limited circumstances). Therefore, the fact that 5K Auto Sales and Sonbol are not licensed, while troubling and criminal if indeed required, cannot form the basis for summary judgment on these claims in favor of Hanson.

Hanson also argues for summary judgment because the repossession took place with a breach of the peace in violation of Minn. Stat. § 336.9-609. What constitutes a "breach of the peace" is not defined explicitly by the Minnesota version of the UCC. Akerlund v. TCF Nat'l Bank of Minn., No. CIV. 99-1537(MJD/JGL), 2001 WL 1631440, at *3 (D. Minn. June 11, 2011). The U.S. Court of Appeals for the Eighth Circuit, applying Minnesota law, has identified several factors in evaluating the reasonableness of a secured party's conduct in repossessing property: (1) where the repossession took place, (2) the debtor's express or constructive consent, (3) the reactions of third parties, (4) the type of premises entered, and (5) the creditor's use of deception. Clarin v. Minn. Repossessors, Inc., 198 F.3d 661, 664 (8th Cir. 1999).

Hanson avers the revocation of consent to repossession, evinced by her repeated

objections, and the location of the repossession being a private residence at a family function constitute a breach of the peace. Sonbol and 5K Auto Sales first argue that they cannot be liable for the acts of Vitzloff and Wilson because the duo were independent contractors. This argument has been unequivocally rejected by Minnesota courts on the ground that the duty to not breach the peace is a non-delegable duty. Nichols v. Metro. Bank, 435 N.W.2d 637, 640–41 (Minn. 1989). Sonbol and 5K Auto Sales next argue under Clarin that the lack of deception and the signed consent of Hanson in the "Right to Repossession" render the repossession lawful. On this record, while a breach of the peace may have occurred, such a finding is for the fact finder. In this District, where, as here, the repossession resulted in a minor physical and verbal altercation, whether there was a breach of the peace "is a matter for the factfinder." Johnson v. Credit Acceptance Corp., 165 F. Supp. 2d 923, 930 (D. Minn. 2001). Therefore, summary judgment on theories of wrongful repossession and conversion is denied.

### 2. Sale and Accounting

Under Minnesota's version of the UCC, a secured party may sell, or otherwise dispose of, collateral it repossesses. Minn. Stat. § 336.9-610. In order to do so, the secured party must notify the debtor in advance. Minn. Stat. § 336.9-611(b). The secured party also must "account to and pay a debtor for any surplus," after statutorily permissible deductions. Minn. Stat. § 336.9-615(d).

Here, neither party disputes that Hanson did not receive notice or the surplus from the sale. As such, Hanson seeks an accounting of the sale. An accounting, however, is an equitable remedy available only in the absence of an adequate legal remedy. See Border State Bank, N.A. v. AgCountry Farm Credit Servs., 535 F.3d 779, 784 (8th Cir. 2008) ("An accounting is an extraordinary remedy usually available only when legal remedies are inadequate.") (citations omitted). An adequate remedy at law may be available.

For example, it may be that 5K Auto Sales is liable for conversion. Here, to the extent a conversion claim is premised on the lack of notice of sale of the Cadillac, no causation has been established between her loss of the car and the lack of notice. But, if conversion, premised on the lack of notice or breach of the peace, were established, the damages would be the fair market value of the vehicle at the time of the conversion plus interest. Bloomquist v. First Nat'l Bank of Elk River, 378 N.W.2d 81, 86 (Minn. Ct. App. 1985). Such damages would be an adequate remedy for any wrongful repossession and subsequent sale. Therefore, summary judgment in favor of Hanson for an accounting is premature and is denied.

**D.    42 U.S.C. § 1983**

The final claim asserted by Hanson against 5K Auto Sales and Sonbol is for violation of 42 U.S.C. § 1983. Section 1983 "provides a remedy for deprivations of rights secured by the Constitution and laws of the United States when that deprivation takes place 'under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . .'" Lugar v. Edmondson Oil Co., 457 U.S. 922, 924 (1982) (quoting 42 U.S.C. § 1983). Where, as here, a plaintiff asserts a claim under the Fourteenth Amendment, some conduct that may be fairly characterized as "state action" must be shown. Id. On that ground, for a private party to be liable, it must be "because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State." Id. at 937. "When a police officer is involved in a private party's repossession of property, there is no state action if the officer merely keeps the peace." Moore, 404 F.3d at 1046. Stated another way "[t]he mere presence of police at the scene of a private repossession does not, alone, constitute state action causing a deprivation of a protected property interest." Abbott v. Latshaw, 164 F.3d 141, 147 (3d Cir. 1998). However, "there is state action if the officer affirmatively intervenes to aid the repossessor enough that the repossession would not have occurred without the officer's help."

Moore, 404 F.3d at 1046 (citing Marcus v. McCollum, 394 F.3d 813, 818–19 (10th Cir. 2004)). Law enforcement should not function as a "curbside courtroom" deciding who is entitled to possession. Marcus, 394 F.3d at 820 (quoting Abbott, 164 F.3d at 149).

Here, a genuine issue of material fact exists as to whether any state action took place. Construing the facts in favor of 5K Auto Sales and Sonbol, as we must, Ludwig, 54 F.3d at 470, Deputy Fournier did no more than merely being present at the repossession. He did not arrive with Vitzloff and Wilson, but rather afterwards. Hill Aff. Ex. A. Both groups, Vitzloff and Wilson and Hanson and her mother, asked Deputy Fournier for assistance and both were refused. Id. Although Hanson claims Deputy Fournier told her to acquiesce to the repossession so that "it would go better in court," Compl. ¶ 52, Deputy Fournier claims he did not tell Hanson that the repossession was legal or advise her not to object. See id. Therefore, a genuine issue of material fact exists regarding state action, and Hanson's Motion with respect to her § 1983 claims is denied.

## IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Hanson's Motion for Summary Judgment [Docket No. 21] is **DENIED**.

BY THE COURT:

s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  December 23, 2011.